IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

           Plaintiff,

Vs.                                  No. 07-40156-01-SAC

J. JESUS GONZALES GUERRERO,
a.k.a. Antonio Castro-Martinez,

           Defendant.

MEMORANDUM AND ORDER

The case comes before the court on the defendant's pretrial motion to suppress evidence retrieved from the search of a cell phone pursuant to a warrant (Dk. 20) and his motion for a *James* hearing (Dk. 21). The government has filed its response under seal opposing the motion to suppress and disputing the need for a *James* hearing. (Dk. 29). The parties have fully and adequately briefed the issues of law that are decisive of these motions. Neither party has requested a hearing, and there are no disputed questions of fact that materially impact the analysis of these issues. For these reasons, the court will rule on the pending motions without a hearing.

**INDICTMENT**

A five-count indictment was returned against the defendant in December of 2007 that charged him with one count of conspiracy to possess with the intent to distribute and dispense 500 grams of methamphetamine from on or about August 26, 2007, to on or about September 8, 2007, and with four counts of using a cellular telephone with the assigned number 785-249-6529 bearing an electronic serial number subscribed to Roberto Guadiana to commit, cause or facilitate the drug trafficking offense on four dates in August of 2007.

**FACTS**

On September 13, 2007, a task force officer with the Drug Enforcement Administration ("DEA") applied for a search warrant on a "black Nokia/Verizon Model 2366I cellular telephone currently located in evidence under case # 02-07-12404 in the custody of the Lawrence Kansas Police Department" in Lawrence Kansas.  (Dk. 29-3, p. 1).  Based on the application and officer's affidavit in support of it, the United States District Court in the District of Kansas found probable cause and issued a delayed notification search warrant on September 13, 2007, that authorized the search of this cellular telephone for identifying numbers on the phone to assist in identifying the owner/possessor of the phone and for all

information stored in the memory or data bases including: "lists of incoming, outgoing, and missed phone calls, sent and received text messages, contact names and phone numbers stored in the phone memory, and photos that have been stored in the phones memory." (Dk. 29-2, p. 1). The warrant was executed on September 14, 2007, but the return was not made until December 13, 2007, consistent with the delayed notification term of the warrant.

The supporting affidavit describes an ongoing DEA investigation in Topeka, Kansas, of a person known as Roberto Guadiana from whom undercover officers had made a number of purchases of methamphetamine between May and August of 2007. Pursuant to a court order, officers had been intercepting communications to and from a cellular telephone number (785) 249-6529 subscribed to Guadiana. During the authorized two-week period of interception, officers determined that over one-fourth of the logged calls involving that telephone were "pertinent in relation to the distribution of narcotics." (Dk. 29-3, pp. 4-5).

The affidavit summarizes the events leading to the defendant's arrest and the seizure of a cellular telephone. On September 8, 2007, a car operated by the defendant was stopped in Lawrence, Kansas, for a

traffic violation.  During the stop, officers arrested the defendant for a narcotics violation after finding in the defendant's possession what appeared to be and was later confirmed to be methamphetamine.  The Lawrence officers also found the defendant in possession of a cellular telephone.  Officers seized the telephone and placed it in the department's custody.  This is the same cellular telephone described in the application for a search warrant.  The defendant told the Lawrence officers that his telephone number was 785-230-5716.

The affidavit shows a connection between the DEA investigation of Guadiana and the telephone number (785-230-5716) offered by the defendant.  The affidavit references an intercepted conversation between Guadiana and someone using that number on August 31, 2007, during which the unknown male arranged to obtain narcotics from Guadiana.

The affiant informs the issuing judge that by training and experience he knows that cellular telephones are commonly involved in the distribution of controlled substances.  The phones are used to communicate with co-conspirators.  The affiant has learned that dealers frequently store the names and numbers of contacts in the cellular

telephones and that text messaging is also a common communication method. The affiant explained that he knew cellular telephones can store telephone and address directories, retain text messages, take and store digital photographs, and maintain lists of calls received, sent and missed.

The affidavit outlines that officers had stopped monitoring the cellular telephone number of (785) 249-6529 on September 4, 2007, as the volume of calls was low and Guadiana had indicated in conversations that he was using a new telephone. The affidavit also states that Guadiana "appears to be dropping cell phones quickly to avoid detection by law enforcement, making it ever more difficult to seek lawful orders to monitor his drug-related cell phone conversations pursuant to this ongoing investigation." (Dk. 29-3, at p. 9).

## MOTION TO SUPPRESS

The defendant seeks to suppress the evidence retrieved from the defendant's cellular telephone on September 14, 2007, in the execution of the federal search warrant. The defendant argues three grounds, but none is a tenable basis for the relief sought.

### Stale Information

The defendant argues that the information found in the affidavit

was stale and that it was unreasonable to believe that the cellular telephone seized from the defendant would contain any "timely information, for example, concerning the sources of supply for the organization responsible for the distribution of the methamphetamine." (Dk. 20, p. 6).[1] The officers knew Guadiana was "dropping cell phones quickly" and was switching to a new telephone number. Consequently, officers stopped monitoring the cellular telephone number of (785) 249-6529 on September 4, 2007. The affidavit describes a phone call between this monitored number and (785) 230-5716 which is the telephone number furnished by the defendant as his cellular telephone's number. This described phone call occurred thirteen days before the search warrant was issued. Thus, the defendant concludes this information was stale and could not support an application for a search warrant on September 13, 2007, five days after

---

[1] To bolster his claim of staleness, the defendant limits the possible relevant evidence on the telephone to Guadiana's sources. The warrant application and affidavit on this telephone is not limited to seeking such information. The affidavit discusses that officers had yet to identify Guadiana's sources as justification for the delayed notification, but it does not state that officers believed the only relevant information on this particular phone was Guadiana's possible sources. The affidavit, instead, recognizes the telephone to be a communication tool between all other co-conspirators (suppliers and distributors at all levels) that could reasonably contain evidence regarding the identities of these other co-conspirators as well as the substance of their conspiratorial communications.

the defendant's arrest.

Probable cause to issue a search warrant exists when the facts and circumstances laid out in the supporting affidavit "would lead a prudent person to believe a fair probability exists that contraband or evidence of a crime will be found in a particular place." *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001) (citing *United States v. Wicks*, 995 F.2d 964, 972-73 (10th Cir.), *cert. denied*, 510 U.S. 982 (1993)), *cert. denied*, 535 U.S. 945 (2002).  The task of an issuing judge is "to make a practical, common-sense determination" from the totality of the circumstances whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The issuing judge is expected to draw reasonable inferences from the affidavits.  *See United States v. Edmonson*, 962 F.2d 1535, 1540 (10th Cir. 1992).

If the judge only considered a supporting affidavit in issuing the warrant, the reviewing court likewise determines the existence of probable cause for the warrant exclusively from the supporting affidavit's four corners. *See Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971); *United States v. Beck*, 139 Fed. Appx. 950, 954, 2005 WL

1649310 (10th Cir. 2005). In determining whether probable cause supports the search warrant, the court assesses the sufficiency of the underlying affidavit against the totality of the circumstances to ensure "the magistrate had a substantial basis for concluding that probable cause existed." *United States v. Tisdale*, 248 F.3d 964, 970 (10th Cir. 2001) (internal citations and quotations omitted), *cert. denied*, 534 U.S. 1153 (2002). "Searches conducted pursuant to a warrant are favored, and as such, the magistrate's determination that probable cause exists is entitled to great deference." *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005) (citations omitted).

"A search warrant may not issue if based upon information that has grown stale, *i.e.*, information that no longer supports an affidavit's underlying assertion that the item sought will be found in the area or location to be searched." *United States v. Cantu*, 405 F.3d 1173, 1177 (10th Cir. 2005). Staleness is not a determination made simply by counting the number of days that separate the events described in the affidavit and the application date of the warrant. *United States v. Snow*, 919 F.2d 1458, 1459 (10th Cir. 1990). Instead, staleness "'depends on the nature of the criminal activity, the length of the activity, and the nature of the property to

8

be seized.'" *Cantu*, 405 F.3d at 1177 (quoting *Snow*, 919 F.2d at 1460). If the offense in question is ongoing and continuing, the passage of time is not critically important. *United States v. Mathis*, 357 F.3d 1200, 1207 (10th Cir. 2004).

None of the information found in the warrant affidavit can reasonably be called stale under the circumstances. As fully disclosed in the affidavit, officers had stopped monitoring one cellular telephone number assigned to Guadiana just nine days earlier, because Guadiana had switched to another principal telephone number. There is nothing to suggest that Guadiana would no longer be using another telephone or that Guadiana would no longer be calling or receiving calls from cellular telephones used by co-conspirators or that co-conspirator's cellular telephones would not contain evidence of communications with Guadiana or other co-conspirators. The defendant does not attempt to argue or explain that Guadiana's practice of changing cellular telephones would be one that his co-conspirators would follow too. Under these circumstances, there is a fair probability that the seized telephone would contain evidence of recent communications between co-conspirators involved in an ongoing conspiracy to distribute methamphetamine.

Overbroad Warrant

The defendant claims the warrant is overbroad in authorizing the search of all information stored in the cellular telephone "without regard to whether there was any nexus to the alleged criminal activity." (Dk. 20, p. 5). The government insists the warrant particularly describes the item to be searched and the things to be seized and only "allowed the search of a specific item for specific information." (Dk. 29, p. 12). The defendant correctly argues that the warrant on its face authorizes the search and seizure of "any and all information stored in the . . . memory or data bases" without requiring the information to be related specifically to drug trafficking.

"The Fourth Amendment requires that a search warrant describe the things to be seized with sufficient particularity to prevent a general exploratory rummaging in a person's belongings." *United States v. v. Brooks*, 427 F.3d 1246, 1251 (10th Cir. 2005) (quotation and citation omitted), *cert. denied*, 546 U.S. 1222 (2006). The Tenth Circuit has articulated the general standard for applying the particularity requirement:

> "A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized. Even a warrant that describes the items to be seized in broad or generic terms may be valid when the description is as specific as the

10

circumstances and the nature of the activity under investigation permit.  However, the fourth amendment requires that the government describe the items to be seized with as much specificity as the government's knowledge and circumstances allow, and warrants are conclusively invalidated by their substantial failure to specify as nearly as possible the distinguishing characteristics of the goods to be seized."

*United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir.) (quoting *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988)), *cert. denied*, 546 U.S. 919 (2005).

The warrant here describes with sufficient particularity the cellular phone to be searched and the specific lists, data, memory, and information sought.  What is problematic is that the warrant essentially authorizes a search of the phone's entire memory but then fails to limit the search of the telephone to evidence of a specific federal crime.  In warrants for computer searches, the Tenth Circuit has suggested that the warrant "must affirmatively limit the search to evidence of specific federal crimes or specific types of material."  *United States v. Riccardi*, 405 F.3d at 862 (citations omitted).  Of course, this cellular telephone differs from a computer in the nature and amount of information found on it.  Indeed, the warrant is not overbroad in recognizing the fair probability of finding relevant evidence of drug trafficking contacts and communications in all

segments of the phone's memory and data.

What remains a concern is that the warrant does not limit the search to drug trafficking evidence.[2] Even so, the court is left with the practical question whether this additional particularity would have had any impact on the search of the cellular telephone. If used as a communication tool in the trafficking of drugs, then all aspects of the cellular telephone involved in communication functions would be subject to searching. The defendant does not identify what other information existed on this particular cellular telephone that would have been protected from the search if this additional particularity had appeared in the warrant. Even assuming there to be some, there is no reason to believe that the summary nature of information commonly stored on cellular telephones would fairly submit to any meaningful screening or sorting process during the search. Because a drug dealer is unlikely to label names in his directory as either buyers or suppliers, a reasonable search of the telephone is likely to require investigating every number and reviewing every call, message, and photo.

---

[2] If this had been a deficiency, the affidavit could have been considered as a cure if it "had been incorporated in and attached to the warrant." *United States v. Riccardi*, 405 F.3d at 863 at n.1. The court cannot make that inference from the present record, even though the affiant was the same officer executing the search warrant.

12

While the better practice would have been for the warrant on this cellular telephone to have expressly referenced the federal crime of drug trafficking, the court finds nothing to indicate that the search and seizure of evidence from the cellular telephone exceeded the lawful drug trafficking scope of the warrant.  The court concludes that there has been no violation of the particularity requirement on the undisputed facts of this case that would justify the remedy of suppression of any inculpatory evidence of drug trafficking.

### Wrong Telephone Number

The defendant contends the officers should have ended their search of his cellular telephone once it was determined that the telephone number did not match the number given by the defendant and so stated in the affidavit.  The defendant analogizes this situation to officers searching the wrong house.

As the government correctly points out, the warrant here was not limited to a cellular telephone with the assigned number of (785) 230-5716 but to a cellular telephone identified by manufacturer and model number that had been seized from the defendant when he was arrested for possession of narcotics.  The defendant supplied this erroneous telephone

number to the officers. The officers made no mistake in including that number in the affidavit. The officers used that number to link the defendant to telephonic communications intercepted in an ongoing drug trafficking investigation. The affidavit established probable cause based on the defendant having been arrested while in possession of methamphetamine and a cellular telephone, the officers' averment on the use of cellular telephones in drug trafficking operations, and the defendant's statement identifying his telephone by a number that matched a telephone number used in a recently intercepted call involving the sale of narcotics. The call had been intercepted as part of an ongoing investigation into a conspiracy to distribute methamphetamine. It was enough for probable cause that the defendant provides this number linking himself to an ongoing conspiracy to distribute methamphetamine and that the defendant is found in possession of methamphetamine along with the cellular telephone, a common tool and method of communication in drug conspiracies. Probable cause did not depend on the cellular telephone's number actually matching the number provided by the defendant.

From the undisputed record furnished in the parties' pleadings, the court is satisfied that despite the defendant's arguments the warrant

was properly issued upon an adequate finding of probable cause and the officers appropriately executed the search warrant.

## MOTION FOR A *JAMES* HEARING

In his motion, the defendant writes that he anticipates the government seeking to introduce co-conspirators' statements pursuant to Fed. R. Evid. 801(d)(2)(E). The defendant asks the court to conduct a *James* hearing to determine the admissibility of any such statements. The government explains this is a full discovery case so the defendant has been provided with the transcripts of the conversations that are the subject of the different counts and with the post-plea debriefings of co-conspirators. The government remarks that through Guadiana's testimony at trial it will establish the existence of a conspiracy, the membership of the declarant and the defendant, and the making of statements in the course of and in furtherance of the conspiracy.

Under Rule 801(d)(2)(E) of the Federal Rules of Evidence, a statement is not hearsay if it is made by "a co-conspirator of a party during the course and in furtherance of the conspiracy." The Tenth Circuit case law recognizes that "a district court can only admit coconspirator statements if it holds a *James* hearing or conditions admission on

forthcoming proof of a predicate conspiracy through trial testimony or other evidence" and that its "strong preference" is for a *James* hearing  *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir.) (quotations and citations omitted), *cert. denied*, 127 S. Ct. 3069 (2007). Before a co-conspirator's statement can be admitted pursuant to Rule 801(d)(2)(E), the trial court must determine by a preponderance of the evidence that: (1) that a conspiracy existed; (2) that the declarant and the defendant were both members of the conspiracy; and (3) that the statements were made in the course of and in furtherance of the conspiracy. *United States v. Sinclair*, 109 F.3d 1527, 1533 (10th Cir.1997). When justified by the length, complexity and size of a conspiracy, as well as the number of co-conspirator statements involved, this court has waited until trial when it is in a better position to analyze the admissibility of specific co-conspirator statements. The decision to deviate from the preferred procedure resides within the trial court's sound discretionary judgment, but absent a substantial reason the preferred order of proof should be followed. *United States v. Troutman*, 814 F.2d 1428, 1448 (10th Cir. 1987). If it does not hold a *James* hearing, the district court must make, at least, preliminary factual findings on the record regarding the admissibility of the statements.

*See United States v. Perez*, 989 F.2d 1574, 1580 (10th Cir. 1993) (en banc).

The government's written proffer is not sufficient for this court to deny the defendant's request for a *James* hearing and to make preliminary factual findings on admissibility. While the government appears to be relying on the testimony of one witness to establish the existence and membership of the conspiracy and to introduce the co-conspirators' statements, the government has not tendered the appropriate proffer. Consequently, at the status conference the court will be prepared to schedule a *James* hearing for an appropriate time. The option remains available for the government to proffer its 801(d)(2)(E) evidence at the status conference prior to trial, either orally or in written form. Such a proffer shall include not only the specific statement(s) of the co-conspirator which the government seeks to admit pursuant to 801(d)(2)(E), but also a concise summary of other evidence sufficient to meet its burden under that rule, *i.e.*, that a conspiracy existed, that the declarant and the defendant were members of the conspiracy, and that the statements were made in the course of and in furtherance of the conspiracy. After receiving this proffer, the court will be in a better position to determine whether an

additional *James* hearing is then necessary to prove the existence of the predicate conspiracy.

      IT IS THEREFORE ORDERED that the defendant's motion to suppress (Dk. 20) is denied;

      IT IS FURTHER ORDERED that the defendant's motion for *James* hearing (Dk. 21) is conditionally granted.

      Dated this 24th day of June, 2008, Topeka, Kansas.

      s/ Sam A. Crow
      Sam A. Crow, U.S. District Senior Judge